UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:13-CV-758-H

MARK KOROLUK                                                               PLAINTIFF

v.

ERIC FANNING, in his official
capacity as Acting Secretary, Dept. of the Air Force                          DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Mark Koroluk, alleges that various military officials violated his constitutional rights disenrolling him from the Air Force ROTC ("AFROTC") cadet program at the University of Louisville ("U of L").[1] Defendant moved for dismissal on a variety of grounds. Subsequently, Plaintiff responded to the motion and also filed an Amended Complaint which essentially changes his theory of the case. Indeed, the Amended Complaint appears to supersede rather than supplement the original complaint.

I.

As best the Court can tell, the relevant facts are these. Though, as will be evident, the Court resolves the current situation without much reference to them.

Koroluk began his studies at U of L in the fall of 2008 as a scholarship cadet of the AFROTC, meaning that he could enroll as a commissioned officer of the Air Force upon successful completion of his training and studies. Koroluk's AFROTC record for the 2008-2009

---

[1] Specifically, Koroluk contends that the "Air Force's decision to disenroll him from its ROTC program . . . deprived him of procedural and substantive due process . . . and equal protection, all in violation of the Fifth Amendment . . . [and] was arbitrary and capricious." DN 21 at 1. The initial complaint named Jefferson Dunn, Colonel with the U.S. Air Force, in his individual and official capacity. Dunn was the Commander of the Air Force Reserve Officer Training Corps at U of L. On May 23, 2014, Koroluk amended his complaint to name as the sole defendant Eric Fanning in his official capacity as Acting Secretary of the Air Force. The amended complaint adds that judicial review is proper and Koroluk's claims cognizable under the Administrative Procedures Act, 5 U.S.C. § 500 *et seq.* and the Tucker Act, 28 U.S.C. § 1491. *See* DN 21, ¶ 61-65.

academic year is riddled with what the AFROTC terms "conditional events." In December 2008 and again in March 2009, Koroluk received a conditional event for "[f]ailure to maintain academic retention standards." In April 2009 he received a third conditional event for being "[l]ess than full time status." On June 3, 2009, he received a fourth event for failure to maintain academic retention standards and AFROTC terminated his scholarship and disenrolled him as a contract cadet.[2] This important contextual information is nowhere mentioned in Koroluk's complaint. Koroluk's claims center around a later disenrollment.

On October 30, 2009, Koroluk attended a party where underage drinking occurred. Other cadets were present and Captain Stacey Swanson, then-Commandant of Cadets of the AFROTC at U of L, investigated the event. Swanson met with Koroluk as part of this investigation and subsequently compiled a report. She took no specific action as to Koroluk.[3]

Between October 30, 2009 and December 2010, Koroluk became a non-contract cadet with the AFROTC. On December 18, 2010, Koroluk and a female named Rachel Gregor ("Gregor") drank beer in Koroluk's apartment and had consensual sex. Koroluk was 20 years old at the time. This underage drinking event was irrelevant until May 2012 when the AFROTC began investigating the events of that night. In the interim, Koroluk was permitted to re-enroll as a contract cadet with the AFROTC in August 2011.

---

[2] Neither the complaint nor amended complaint mention that Koroluk first enrolled at U of L as a contract cadet in 2008 or the fact of the four conditional events he received in the first year of his university studies, which culminated in his disenrollment in June 2009. The complaint does aver that Koroluk was "not yet an ROTC cadet, but was instead a civilian" at the time of an AFROTC investigation in October 2009. DN 21 at ¶ 11. Of course, to say that Koroluk was a civilian at that time does not mean he was merely a citizen; in fact, the documents in the record reveal that in October 2009, Koroluk was a former cadet who hoped to reclaim his scholarship cadet status.

[3] Koroluk is adamant that he was merely a civilian at the time of this underage drinking party, that he neither supplied nor drank alcohol, and that he complied with Swanson's investigation because he hoped to once again become a cadet and get on track to becoming a commissioned officer of the U.S. Air Force. Swanson has gone on record claiming that her report, as it pertained to Koroluk, was non-disciplinary in nature: "Simply put, the event and the subsequent documentation are not, and never were intended to be, evidence of an 'alcohol related incident.'" DN 1-3. Swanson has described her report as a "counseling statement[]," an instructional tool on "the principles of leadership." *Id.*

In early 2012, a female cadet reported a sexual assault. In the course of this report, the female cadet alluded that Koroluk might have sexually assaulted Gregor at some unknown time. On May 16 or 17, 2012, Colonel Kevin Raybine, then commander of the AFROTC detachment at U of L, commenced an investigatory disenrollment process for Koroluk. Raybine appointed Captain Kent Moore "to conduct an investigation into the disenrollment action against" Koroluk.[4] Koroluk was simultaneously notified of the disenrollment action. In the space provided on the AFROTC Form 10 for informing Koroluk of the reason(s) for the disenrollment action, Raybine did not check "Failure to Maintain Military Retention Standards." Rather, he checked "Other" and specified "Sexual Assault" on the line next to "Other." In the space for additional details, Raybine typed, "You have been accused of sexual assault by a former cadet."

Form 10 appointed Captain Jessica Tuntland to serve as Koroluk's Military Advisor. If Koroluk so requested, Tuntland was to "advise [him] on matters regarding military bearing," "assist [him] in obtaining copies of [his] military records," and "provide general administrative assistance to [him]." Form 10 effectively noticed Koroluk that he could be disenrolled for anything uncovered in the course of the investigation of the initiating allegation for sexual assault.

On June 26, 2012, Raybine filled out a Form 22, "Cadet Personnel Action Request," for Koroluk. Raybine wrote,

> After careful review of the investigation for sexual assault, I find no evidence an assault occurred. The sex between the accuser and Cadet Koroluk was consensual. The accuser has withdrawn her claim[5] and requested the

---

[4] The completed Form 10 is found at DN 1-6.
[5] Koroluk claims, and Gregor's affidavit alludes, that Captain Moore misunderstood that Gregor herself had made a claim of sexual assault. Moore conducted his investigation with Gregor over email because she was studying abroad in the spring of 2012. In an email to Moore dated May 15, 2012, Gregor wrote "On December 18, 2010 Cadet Koroluk invited me to hang out with him . . . at his apartment . . .. At his apartment, he offered me alcohol (neither of us were 21), and I accepted. I had at least 3 to 5 alcoholic drinks and passed out at his apartment. Cadet Koroluk took advantage of me sexually while I was under the influence of alcohol. Although Cadet Koroluk has not taken advantage of me aside from this occurrence, he has provided alcohol to me at his apartment on several occasions."

3

investigation be stopped. I recommend Cadet [M]ark Koroluk be returned to full cadet status without prejudice or delay.[6]

Nevertheless, on July 2, 2012, Koroluk received a DD Form 785, a "Record of Disenrollment from Officer Candidate-Type Training," completed by Paul Hamilton, Registrar of the AFROTC, which disenrolled Koroluk as of July 25, 2012. In the box for "Reasons and Circumstances for Disenrollment," it stated:

> Disenrolled under the provisions of AFI 36-2011, paragraph 6.1.5, and AFROTCI 36-2011, paragraph 11.4.2.3, failure to maintain military retention standards. Cadet Koroluk failed to maintain military retention standards when he was involved in multiple alcohol related incidents. Second disenrollment from a commissioning source.[7]

With regard to Koroluk's eligibility for future officer training in any United States Armed Service, Hamilton checked the box, "Should not be considered without weighing the 'needs of the service' against the reasons for this disenrollment."

Despite repeated requests, Koroluk did not learn an explanation about the "multiple alcohol-related incidents" from the Air Force until after his military appeal. Thus, Koroluk claims he "was unable to address the alcohol related incidents." Later, Koroluk involved a U.S. Congressman, who discovered and relayed to Koroluk that the incidents referred to were: (1) the October 2009 incident that Stacey Swanson investigated and (2) the drinking Koroluk "candidly admitted" he engaged in the night he had consensual sex with Gregor in December 2010.

---

DN 19, p. 8-10. In a later affidavit dated June 8, 2013, Gregor wrote "Prior to being contacted by Kent Moore, I had no intention of reporting any incident involving Mark Koroluk and did so only at the request of Kent Moore. . . . I did not, at any time during the investigation [with Moore] or otherwise, claim to have been sexually assaulted by Mark Koroluk; I did state the sequence of events on December 18, 2010 and responded to some follow up question. Kent Moore apparently misinterpreted my statements as an accusation against Mark Koroluk of sexual assault. I was not sexually assaulted by Mark Koroluk." DN 1-4. This dispute material only to explain Raybine's wording in Form 22, referencing a "withdrawn" sexual assault claim.

[6] DN 1-7.

[7] The ROTC is one of four commissioning sources for officers of the United States Armed Forces. Approximately 30 percent of commissioned military officers receive their commission through the ROTC. DN 8-1, p. 1. The Court notes that the motion to dismiss included excerpted portions of what it deemed the "[r]elevant [r]egulations," DN 8-3, but the subsections referenced in Koroluk's Form 785 are not found in the regulations excerpted at DN 8-3.

On July 29, 2013, Koroluk filed a complaint in federal court naming as defendant Jefferson Dunn, Colonel, U.S. Air Force, individually and in his official capacity as the Commander of the AFROTC at U of L at the time of Koroluk's disenrollment. That complaint listed four causes of action, two Equal Protection and two Due Process violations. Koroluk's actual allegations are somewhat confusing. First, he essentially claimed that the AFROTC's use of alcohol-related "incidents" to disenroll him was pretext to discipline him for the "allegation that he sexually abused a woman." According to Koroluk, this constituted sexual discrimination because "[p]unishing a man for an untrue allegation of sexual abuse, but not punishing women for similar untrue allegations, deprives Plaintiff of equal protection."[8] Alternatively, Koroluk claimed that by relying on the single December 2010 alcohol-related incident to disenroll him, AFROTC violated the Equal Protection Clause by treating him as a "class of one."[9] Koroluk has also claimed the AFROTC did not afford him procedural due process in his disenrollment and that the military's decision to disenroll him was "arbitrary, capricious, unjust, and shocking to the conscience" as part of his substantive due process claim.[10] Koroluk requested compensatory damages and an injunction requiring AFROTC to rescind its disenrollment order and return Koroluk to full cadet status.

After Defendant moved to dismiss the original complaint however, the Court allowed Koroluk to file an amended complaint. Koroluk's complaint now names as defendant Eric Fanning, Acting Secretary of the Department of the Air Force, in his official capacity and retracts his claim for compensatory damages. He retains his four constitutional arguments but adds two purported bases for subject matter jurisdiction: the Administrative Procedures Act, 5 U.S.C. § 500 *et seq.* and the Tucker Act, 28 U.S.C. § 1491.

---

[8] DN 21, p. 2.
[9] DN 21, p. 2.
[10] DN 21, ¶ 60.

II.

Defendant moved to dismiss Koroluk's complaint on a number of grounds. As it stood, Koroluk's complaint was most vulnerable to Defendant's subject matter jurisdiction attack under FED. R. CIV. P. 12(b)(1). Koroluk's claims were *Bivens* claims, and as such, were subject to the *Feres* doctrine pursuant to *United States v. Stanley*, 483 U.S. 669 (1987). Under the *Feres* doctrine, the government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service. *See Lovely v. United States*, 740 F.3d 778, 782-785 (6th Cir. 2009) (discussing the Supreme Court's expansion of the *Feres* doctrine and applying it to the claims of an ROTC cadet). In *Stanley*, the Supreme Court held that the same "incident to service" rule extends to *Bivens* actions against military officers:

> We [] reaffirm the reasoning of *Chappell* [a case in the *Feres* doctrine progeny] that the 'special factors counselling hesitation'—'the unique disciplinary structure of the Military Establishment and Congress' activity in the field,'—extend beyond the situation in which an officer-subordinate relationship exists, and require abstention in the inferring of *Bivens* actions as extensive as the exception to the FTCA established by *Feres* and *United States v. Johnson*. We hold that no *Bivens* remedy is available for injuries that 'arise out of or are in the course of activity incident to service.'

*Id.* at 684 (internal citations omitted). Because the AFROTC's disciplinary action constitutes an injury "incident to [Koroluk's] service" as a cadet-in-training, the Court would have dismissed Koroluk's original complaint for lack of subject matter jurisdiction.[11]

---

[11] *See Lovely v. United States*, 570 F.3d 778, 783-84 (6th Cir. 2009) (finding that "[a]lthough this is a close case presenting unique circumstances that do not fall directly in line with other cases applying the *Feres* doctrine," the doctrine's rationales and the Sixth Circuit's broad interpretation of it supported finding dismissed cadet's IIED claims barred by the *Feres* doctrine). *See also Stone v. Groves*, 2001 WL 1772119, *3 (W.D. Ky. Dec. 21, 2001) (dismissing under Rule 12 a complaint challenging plaintiff's dismissal from the Kentucky Air Force National Guard: "The Court . . . declines . . . to enter into an area the Supreme Court has deemed outside the province of the federal judiciary; namely, internal military disciplinary actions.").

III.

The Court concludes that for all pertinent purposes Plaintiff's amended complaint abandons his original legal theories and replaces them with more logical claims under the APA.

The Court has already stated a number of reasons why the original *Bivens* action asserting constitutional claims cannot survive. The Court does not believe that Plaintiff has a property interest in continued military service which is protected under substantive due process. Moreover, it is highly unlikely that Plaintiff could sustain an equal protection claim based on Plaintiff's mistreatment as a male, even if he could assert such a claim. Viewing these claims as abandoned leaves Plaintiff with remaining claims under the APA and the Tucker Act, neither of which claims are subject to motions as yet.

Normally, the Court resolves an appeal under the APA on the existing record. Whether that is true here, and whether Koroluk has exhausted his administrative remedies such that review of the tribunal's final decision would be proper, the Court is not certain. Therefore, the Court will set a conference to discuss the next steps in this litigation.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's *Bivens*-type constitutional claims alleging violations of substantive due process and equal protection are DISMISSED WITH PREJUDICE. Plaintiff's remaining claims may proceed under the APA and the Tucker Act.

IT IS FURTHER ORDERED that the Court will set a scheduling conference in the near future.

cc:     Counsel of Record