UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:13-cv-00758-JHM

MARK KOROLUK                                                          PLAINTIFF

V.

ERIC FANNING, in his official                                        DEFENDANT
capacity as SECRETARY, DEPARTMENT
OF THE AIR FORCE

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Judgment on the Administrative Record [DN 54]. Fully briefed, this matter is ripe for decision. For the following reasons, Plaintiff's Motion is **DENIED**.

I. BACKGROUND

Plaintiff originally filed his Amended Complaint on May 23, 2014, alleging equal protection claims, substantive and procedural due process claims, and claims under the Administrative Procedures Act (hereinafter "APA") and the Tucker Act. (Pl.'s Am. Compl. [DN 21] at 10–13.) Having exhausted all administrative remedies and having all other claims dismissed in previous Orders [DNs 22, 34], Plaintiff now seeks a judgment on the Administrative Record in regards to his last and only standing claim under the APA. (Pl.'s Mem. Supp. Mot. J. Admin. R. [DN 54-1] at 1.) Plaintiff claims that his disenrollment from the Air Force Reserve Officers' Training Corps (hereinafter "AFROTC") program at the University of Louisville was arbitrary and capricious, in violation of federal and constitutional law. (Pl.'s Am. Compl. [DN 21] at 13.)

On July 25, 2012, Col. Hamilton, acting under his authority as the AFROTC Registrar to make all disenrollment decisions for Detachment 295, disenrolled Plaintiff from the AFROTC

program reasoning that Plaintiff "failed to maintain retention standards when he was involved in multiple alcohol related incidents." (Def.'s Resp. [DN 55] at 9.) Plaintiff now contests the basis for the disenrollment decision, asserting that the evidence does not support a finding of multiple alcohol related incidents and that the internal notification and investigatory procedure was improper. (Pl.'s Mem. Supp. Mot. J. Admin. R. [DN 54-1] at 1.)

The first incident at issue occurred on October 30, 2009, during Plaintiff's first semester attending the University of Louisville. He was not yet was not enrolled in the AFROTC program at this time. (Id. at 3.) Plaintiff had previously been enrolled in the AFROTC program at the Rose-Hulman Institute of Technology during the 2008-2009 academic year, but was discharged from the program on June 3, 2009 for failure to meet academic standards. (Id. at 2.) Therefore, at the time of the first incident relevant to the matter at hand, Plaintiff was not a contract cadet in the AFROTC program, but he was actively seeking enrollment. (Id. at 3.)

On the night of October 30, 2009, Plaintiff attended a private party in which several underage AFROTC cadets consumed alcohol. (Id.) Plaintiff, also underage, did not consume any alcohol, yet he did not attempt to stop consumption by others. (Id.; Admin. R. [DN 50] at 277.) Even though he was not a contract cadet in the program, Plaintiff was asked to provide a statement as part of an investigation of the event undertaken by the AFROTC Detachment. (Pl.'s Mem. Supp. Mot. J. Admin. R. [DN 55-1] at 3.) Plaintiff willingly provided a statement regarding his involvement and identified those who had been drinking. (Id.) In his affidavit regarding the events of the evening, Plaintiff stated he did not drink alcohol, apologized "for not doing anything about the situation when it first came to [his] attention," and asserted that he would "make sure to be a preventer in another situation like this if it were to arise, and make sure there is not a next time ever again." (Admin. R. [DN 50] at 277.)

After the incident, Plaintiff was counseled by Captain Stacy R. Swanson, Commandant of Cadets, and by then Lieutenant Colonel Kevin K. Raybine, Detachment 295 Commander.  This counseling was documented on Form 16, in which Captain Swanson stated that Plaintiff's actions "violated all of the Air Force core values."  (Id. at 210.)  She went on to counsel Plaintiff in the following manner:

> You did not drink, but remaining in that situation was not the best choice.  You are in a unique position, needing our support in order to pursue joining our detachment.  This incident brings that support into serious question.  You have been very visible and helpful within the detachment, then you are involved in a situation that involves underage drinking.  You need to reevaluate your decisions. Because of your actions, you are hereby counseled.

(Id.)  This counseling was provided because Plaintiff was seeking reenrollment in the AFROTC program, meaning he was held to the same high standards as cadets.  (Def.'s Resp. [DN 55] at 4.) In his affidavit taken several years later in 2012, now Colonel Raybine insisted that "the incident described on 13 Nov 09 AFROTC form did not rise to the level of waiverable behavior according to AFROTC standards.  Therefore, [Plaintiff] did not require any kind of waiver for this incident in order to become an Air Force cadet."[1]  (Id.)  Following this incident, Plaintiff successfully reenrolled in the AFROTC program at the University of Louisville.  (Id. at 513–15.)

The second incident occurred on December 18, 2010, after Plaintiff had been reinstated as a non-contract cadet.  (Def.'s Resp. [DN 55] at 4.)  However, the facts of this incident did not come to light until early 2012.  On August 23, 2011, Plaintiff signed a contract with the AFROTC and became a member of the professional officer's course.  (Id.)  In early 2012, a

---

[1] When a cadet fails to meet certain requirements or commits a moral or civil offense and it is brought to the attention of the Detachment, a waiver may be granted so that the cadet may remain in the AFROTC program.  U.S. Dep't of Air Force, Air Force Reserve Officer Training Corps Instruction 36-2011, Cadet Operations paras. 4.1, 4.6 (July 15, 2010).  Alcohol related incidents delineated in AFROTCI 36-2011 require either a Det/CC waiver (offense waived by the Detachment Commander) or an AFROTC/RRFP waiver (offense waived by AFROTC Headquarters). Id. at para. 4.6. Examples of offenses that require waivers include: minor in possession charges (prior to or after enrollment), any civil involvements related to alcohol, providing alcohol to a minor, egregious alcohol related incidents, etc. Id. at paras. 4.6.2–4.6.4.

female cadet reported that she had suffered a sexual assault and had indicated that another female cadet, Rachel Gregor, had potentially suffered an assault as well.  (Id.)  In May 2012, Colonel Raybine appointed Captain Kent N. Moore to investigate the sexual assault allegations.  (Id.)  On May 14, 2012, Captain Moore began emailing Gregor requesting her cooperation with his investigation.  (Admin. R. [DN 50] at 368.)  He began by asking for information regarding another male cadet, with whom he had heard that she may have had some sort of sexual encounter.  (Id.)  Captain Moore stated that he had heard that she may have had a similar experience with a second cadet, and he requested that she describe that encounter as well.  (Id.)  In her response, Gregor detailed the incident with the cadet that Captain Moore originally mentioned, and then revealed that she and Plaintiff had engaged in sexual conduct as well, making the first reference to December 18, 2010.  (Id.)  Up to this point, the AFROTC Detachment was not aware of any of the circumstances surrounding the evening of December 18, 2010.

In her emails to Captain Moore, Gregor described the evening in detail.  She stated:

> [Plaintiff] invited [her] to hang out with him and some of his friends at his apartment in Province.  At his apartment, he offered me alcohol (neither of us were 21), and I accepted.  I had at least 3 to 5 alcoholic drinks and passed out at his apartment.  [Plaintiff] took advantage of me sexually while I was under the influence of alcohol. Although [Plaintiff] has not taken advantage of me aside from this occurrence, he has provided alcohol to me at his apartment on many occasions.

(Id. at 367.)  Gregor went on to assert in a later email that "without a doubt [she] would not have slept with either [the first male cadet or Plaintiff] sober."  (Id. at 363.)  She also stated that she had further sexual relations with Plaintiff on three to four other occasions between December 2010 and December 2011.  (Id. at 364.)  Additionally, she disclosed that Plaintiff had provided her with alcohol on about four or five other occasions, specifically twice during August 2011 and

4

twice during December 2011.  (Id. at 365.)  She later confirmed that there were other cadets in Plaintiff's apartment whenever she was there, but refused to give further identifying details in order to protect others from being punished.  (Id. at 360.)  After several subsequent emails were exchanged, Gregor decided to terminate the conversation, stating: "After careful consideration, I would like to have all written statements I made regarding [Plaintiff] removed from all records." (Id. at 359.)

After receiving incriminating emails from Gregor, on May 17, 2012, Colonel Raybine completed AFROTC Form 10, entitled "Administrative Disenrollment Action Worksheet," beginning the disenrollment process for Plaintiff.  (Id. at 373.)  The worksheet provides many options so that one may choose a prepopulated reason as to why one is initiating a disenrollment action.  (Id.)  Colonel Raybine selected the "Other" box, and specifically listed "sexual assault" as the reason.  (Id.)  Colonel Raybine additionally expressed: "Although I am initiating this action for this reason or reasons, [Plaintiff's] possible disenrollment from AFROTC is not limited to these particular reason or reasons."  (Id.)  Plaintiff was appointed a military advisor and investigation officer, and he signed this form on May 17, 2012 indicating that he would not be waiving his right to an investigation or his right to submit written materials.  (Id.)

During the course of the ensuing investigation, Plaintiff made a statement to Captain Moore regarding December 18, 2010 and his relationship with Gregor.  (Id. at 375.)  In this statement, Plaintiff made clear "that Rachel Gregor had a couple of beers and he had a couple of beers."  (Id.)  In regards to later relations with Gregor, Plaintiff stated that "during the Spring 2011 semester and summer, he and Rachel had an on-again-off-again relationship.  They had sex on several other occasions and alcohol was involved on a few of the occasions."  (Id.)

Upon completing the investigation, Captain Moore turned over his findings to Colonel Raybine, who then made a recommendation to the AFROTC Registrar, Colonel Hamilton. (Def.'s Resp. [DN 55] at 9.)  Colonel Raybine completed AFROTC Form 22, entitled "Cadet Personnel Action Request," in regards to Plaintiff and the investigation.  (Id.)  On July 2, 2012, Colonel Raybine concluded: "After review of the investigation for sexual assault, I find no evidence an assault occurred.  The sex between the accuser and [Plaintiff] was consensual.  The accuser has withdrawn her claim and requested the investigation be stopped.  I recommend [Plaintiff] be returned to full cadet status without prejudice or delay."  (Admin. R. [DN 50] at 369.)  According to AFROTC Instruction 36-2011, despite the fact that the Detachment Commander, here Colonel Raybine, "makes a specific recommendation concerning a cadet's disenrollment or continuation in the AFROTC program," the AFROTC Registrar ultimately "establishes and executes policies and procedures governing all facets of AFROTC disenrollment."  (Def.'s Resp. [DN 55] at 9.)

Upon review of Colonel Raybine's recommendation and acting under his authority as Registrar, Colonel Hamilton disenrolled Plaintiff, effective July 25, 2012.  (Pl.'s 's Mem. Supp. Mot. J. Admin. R. [DN 54-1] at 4.)  Colonel Hamilton stated on the DD Form 785 (the disenrollment form) that Plaintiff was being disenrolled because Plaintiff "failed to maintain military retention standards when he was involved in multiple alcohol related incidents." (Admin. R. [DN 50] at 370.)  Though failure to complete the AFROTC program could result in Plaintiff serving a term of active duty as an enlisted airman, Colonel Hamilton neither activated him, nor required him to repay his stipend of $3,720.00.  (Def.'s Resp. [DN 55] at 10.)

Upon notice of his disenrollment, Plaintiff undertook many actions in order to appeal the decision.  On August 9, 2012, he appealed his disenrollment to the Headquarters AFROTC

Commander, Jefferson S. Dunn.  (Admin. R. [DN 50] at 420.)  On October 4, 2012, Plaintiff received a letter denying his appeal from Colonel Dunn, which stated that just because "the investigation was initiated on allegations of sexual assault does not detract from the fact that an investigation was conducted and any information discovered in the course of that investigation could be used as a basis for disenrollment."  (Id. at 460.)  In fact, he pointed out that Colonel Raybine noted on Form 10 that "possible disenrollment from AFROTC is not limited to this particular reason or reasons."  (Id.)  He additionally posited that the investigative procedures "are not rights afforded to [Plaintiff], but guidelines to assist the Detachment Commander in obtaining the best possible information for a recommendation to me made to HQ AFROTC, which is the approval/disapproval authority for disenrollments."  (Id. at 461.)  He concluded by affirming Plaintiff's disenrollment.  (Id.)

In the meantime, Plaintiff had engaged U.S. Congressman Brett Guthrie, whom then made an inquiry on September 25, 2012.  (Id. at 434.)  Colonel John Larson, Chief of the U.S. Air Force Congressional Inquiry Division, then responded on October 11, 2012, also affirming the disenrollment.  (Id. at 449.)  Colonel Larson specifically stated in his letter to Congressman Guthrie that "[d]uring the investigation, it was found and confirmed in [Plaintiff's] oral statement that he was involved in multiple alcohol related incidents, which became the basis for his disenrollment from the AFROTC program."  (Id.)  He went on to note that Plaintiff gave the statement in the presence of his attorney, and Plaintiff clearly knew that "there was a possibility he could be disenrolled for matters other than the alleged sexual assault" based on the statement on Form 10 that Plaintiff's disenrollment was not limited to just the sexual assault charge.  (Id.)  And, he acknowledges that "AFROTC personnel indeed did not follow every procedural step of

the instruction, [but] those errors would not have led to any substantive change in the outcome of AFROTC's decision regarding [Plaintiff's] enrollment." (Id. at 450.)

Several further appeals were made to Colonel Dunn and Colonel Larson, all of which were denied. (Id. at 516–25.) Lastly, Retired Colonel Joseph Koroluk, Plaintiff's father, requested relief from Commander and President of Air University, Lieutenant General David Fadok. (Id. at 586.) Lieutenant General Fadok responded by stating that he found that Plaintiff's actions warranted a removal from the AFROTC program, and reasoned that the disenrollment decision was appropriate based on the October 30, 2009 and December 18, 2010 incidents, stating:

> These two cases constitute "multiple alcohol-related incidences." The first incident was used as a learning opportunity and notification of expectations. In the counseling that followed, I am certain your son fully understood the program's standards and expectations. This provides the context for our decision with regard to the second incident, as Mark not only unlawfully consumed alcohol underage, but hosted the party and permitted alcohol to be provided to other underage guests.
> AFROTC presently has an abundance of qualified officer candidates competing to earn a relatively small number of available commissions. Given the highly-competitive nature of the program, it has become increasingly difficult for cadets to receive waivers for substandard performance or other deficiencies.
> After careful consideration and examination of this case, I am satisfied that your son was given fair and equitable treatment by the detachment and HQ AFROTC personnel. I therefore support his removal from AFROTC for failure to meet program standards.

(Id. at 586–87.)

Having received no relief from internal appeals procedures, Plaintiff filed suit in this Court on July 29, 2013. The matter before the Court now is Plaintiff's Motion for Judgment on the Administrative Record to determine if the disenrollment decision was in violation of APA. Plaintiff claims the decision was arbitrary and capricious. The Defendant disagrees and asks that the Complaint be dismissed.

## II. STANDARD OF REVIEW

Under the APA, 5 U.S.C. § 702, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." Therefore, federal courts "may 'hold unlawful' an agency's action or failure to act when it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Kentucky Coal Ass'n, Inc. v. Tennessee Valley Auth., 804 F.3d 799, 801 (6th Cir. 2015) (quoting 5 U.S.C. § 706(2)(A)). The scope of review under the arbitrary and capricious standard is highly deferential and "narrow," so much so that "a court is not to substitute its judgment for that of the agency." Judulang v. Holder, 132 S. Ct. 476, 483 (2011) (citations omitted).

Although this Court may review the agency's decision, "[t]his is not an invitation for judicial second-guessing. [The Court asks] not whether the agency's decision was right but whether as a matter of process we can 'reasonably [ ] discern[ ]' why the agency did what it did and whether as a matter of substance that decision was not arbitrary." Id. (quoting FCC v. Fox Television Stations, Inc., 556 U.S. 502, 513–14 (2009)). "Stated differently, '[t]he arbitrary and capricious standard . . . is met when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome.'" Lerner v. Shinseki, No. 3:12-CV-00565, 2013 WL 5592906, at *5 (W.D. Ky. Oct. 10, 2013) (quoting Admin. Comm. of the Sea Ray Emps.' Stock Ownership & Profit Sharing Plan v. Robinson, 164 F.3d 981, 989 (6th Cir.1999) (citation omitted). Therefore, so long as the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action, including a 'rational connection between the facts found and the choice made'" the Court will not set aside its decision. Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).

### III. RELEVANT REGULATIONS

Several sections from AFROTC Instruction (hereinafter AFROTCI) 36-2011 regarding consumption of alcohol, alcohol related incidents, and disenrollment investigations govern the disenrollment decision in this matter.   This AFROTCI governs Cadet Operations, and the relevant sections are as follows:

4.6.2. Unlawful possession or consumption of alcohol; including Minor in Possession (MIP).   Detachment/CCs may waive ONE incident of unlawful possession or consumption to include "Minor in Possession," or its local equivalent that was the result of a civil involvement for GMC and POC cadets. Waiver for this incident must not involve any other charge, like using a false ID to obtain the alcohol. A conditional event MUST be issued with the Detachment/CC waiver if the event occurred while the cadet was contracted into the AFROTC program. If the event occurred prior to entry in the program, no conditional event is warranted but the Detachment/CC can grant the appropriate waiver. The waiver of a pre- AFROTC MIP charge counts toward the one incident waiverable by the Detachment/CC. All waivers must be appropriately documented on the AFROTC Form 35 and the cadet MUST be counseled via the AFROTC Form 16 that future alcohol-related incidents will result in investigation for disenrollment or dismissal from AFROTC if an RRFP waiver is not granted. (Reference paragraph 4.5.5.1, Table 4.2 and Table 4.3) Cadets (GMC or POC) who self report a minor in possession that did not result in a civil involvement will receive a conditional event and stern warning that any future alcohol-related incidents will result in dismissal or investigation for disenrollment; Detachment/CC waiver is also required.

4.6.3.   Any alcohol-related incident, other than unlawful possession or consumption resulting from a civil involvement, requires RRFP waiver.

4.6.4. Purchase of alcohol for a minor. The purchase of alcohol for a minor, supplying alcohol to a minor, or taking no action to stop the supplying of alcohol to a minor in situations under their control (example: hosting party at their house/apartment, bringing alcohol to tailgate and not controlling it thereby allowing minors to obtain alcohol) will require an RRFP waiver. Issue a conditional event and submit waiver request to RRFP. Should the waiver not be approved non-contract cadets will be released from AFROTC and contract cadets will be investigated for disenrollment.

4.6.4. Multiple alcohol-related incidents will be reviewed very closely when considering waiver requests. Multiple events that show an increase in alcohol use/abuse will not be waived. Alcohol incidents prior to coming to AFROTC will be considered in making the waiver decisions for multiple alcohol-related

incidents, as well as those occurring while under the AFROTC tutelage. For example, if a Det/CC has waived a MIP charge and the cadet later receives a DUI, a waiver is not warranted as the cadet has shown poor judgment with respect to alcohol and has not learned from the first event.

4.6.5. Detachment commanders must look closely at the charge, corroboration, and cadet statement. On a few occasions, police may charge an individual with a higher/lesser charge which will not include the charge of an alcohol-related incident. However, when reading the corroboration or student statement the fact that the individual was under the influence of alcohol can be determined. This is considered an alcohol-related incident for AFROTC waiver consideration. List it as such on the Form 35. For example, a cadet may be charged with trespassing. This would be the charge initially listed on the Form 35. After obtaining corroboration, the police report says the individual was also inebriated. This event is now considered an alcohol-related incident for waiver consideration and must be identified as such on the Form 35 even if waiverable by the detachment commander.

4.6.6. Det/CCs may waive only those alcohol-related involvements listed in Table 4.1. Det/CCs may deny waiver consideration or submit waiver requests to HQ AFROTC/RRFP via AFROTC Form 22, as they deem appropriate (reference AF Form 2030, definition of terms section, for a description of alcohol abuse).

11.2. Authority. The Commander of AFROTC (AFROTC/CC), acting for the United States Air Force, may disenroll any contract cadet at any time with or without cause.

11.8.2. The cadet may also point out issues the cadet believes are relevant to a full and fair consideration of the disenrollment action without presenting direct evidence. The IO should note all issues raised by the cadet and investigate them if appropriate. (If the cadet feels the IO's investigation or discussion of any matter in the ROI is inadequate, the cadet may submit written evidence in response to the ROI.)

11.8.3. A civilian attorney or a member of the cadet's immediate family may attend the personal appearance, if the cadet desires. However, the IO has the discretion and authority to limit the number of individuals present at the personal appearance at any one time to insure safety, efficiency, and good order and discipline. The personal appearance is not a trial or hearing and the IO is not a judge. Rules of evidence or procedure applicable in courts do not apply. If others in attendance interfere in any way with the hearing, the IO may disallow their attendance.

11.10.2. The IO should investigate any issues or allegations made by the cadet during the disenrollment investigation which are not already established or disproved by the evidence (e.g., unfair treatment by unit personnel, administrative

errors, false or incorrect information) on which the disenrollment action is based, or inconsistencies between unit evidence and evidence submitted by the cadet. The IO will either interview applicable individuals to obtain the information necessary to address the cadet's issues or explain in the ROI why further investigation was unnecessary. If any Equal Opportunity and Treatment (EOT) issues arise during the course of the investigation (e.g., sexual harassment or unlawful discrimination), consult with Holm Center/JA before contacting the unit's servicing Military Equal Opportunity office. If any other criminal activity arises in the course of the investigation contact Holm Center/JA.

U.S. Dep't of Air Force, Air Force Reserve Officer Training Corps Instruction 36-2011, Cadet Operations paras. 4.6.2–4.6.6, 11.2, 11.8.2, 11.10.2 (July 15, 2010) [hereinafter AFROTCI 36-2011].

## IV. DISCUSSION

Under the APA, this Court must decide whether or not the decision to disenroll Plaintiff was arbitrary or capricious based on the facts contained in the administrative record.  It is a longstanding principle that the Court must employ "an unusually deferential application of the arbitrary and capricious standard of the APA to military decisions, including those that affect only personnel decisions and are not otherwise operational, strategic or tactical in nature." Foster v. Mabus, 103 F. Supp. 3d 95, 111 (D.D.C. 2015); see also Koroluk v. Fanning, No. 3:13-CV-758-H, 2014 WL 6387514, at *2 (W.D. Ky. Nov. 14, 2014) ("Courts give great deference to the military's exercise of discretion in handling personnel matters."); see e.g. Goldman v. Weinberger, 475 U.S. 503 (1986).  "[T]he special character of the military requires civilian authorities to accord military commanders some flexibility in dealing with matters that affect internal discipline and morale." Rostker v. Goldberg, 453 U.S. 57, 65 (1981).  "The Court's deference to the military is at its highest when the military, pursuant to its own regulations, effects personnel changes through the promotion or discharge process."  Spadone v. McHugh, 864 F. Supp. 2d 181, 187 (D.D.C. 2012) (citations omitted).  "This is because the Constitution vests '[t]he complex, subtle and professional decisions as to the composition, training, equipping,

and control of a military force' in the legislative and executive branches. Moreover, 'it is difficult to conceive of an area of governmental activity in which the courts have less competence.'" Koroluk, 2014 WL 6387514, at *2 (quoting Gilligan v. Morgan, 413 U.S. 1, 10 (1973)).

With the arbitrary and capricious standard in mind, along with the level of deference to be afforded to the agency's decision, the Court must now determine if a rational connection existed between the facts contained in the administrative record and the decision to disenroll Plaintiff from the AFROTC program.  According to disenrollment Form 15, the decision to disenroll Plaintiff was made because of multiple alcohol related incidents.  Therefore, the question is whether or not the facts support a disenrollment decision based on these incidents. Plaintiff claims that the evidence does not support a finding of multiple alcohol related incidents and that the internal notification and investigatory procedure was improper.   The Court will address each of these arguments in turn.

**A.  Alcohol Related Incidents**

Plaintiff basically argues that the first alcohol related incident should not count against him.  He argues that he was a civilian, not subject to discipline, and besides, he did not do anything wrong.  There are affidavits in the record from Captain Swanson and Colonel Raybine that they did not consider the incident to be an "alcohol related incident."  (Admin. R. [DN 50] at 242, 244.)  According to Captain Swanson, the counseling he received was unofficial and not intended to carry any disciplinary significance.  As to the second incident, Plaintiff argues that it was discovered throughout the course of a sexual assault investigation and should not be characterized post-hoc as an alcohol related event.

With respect to the first incident, the record clearly shows that Plaintiff attended a party in which alcohol was being served to underage individuals.  He did not partake, but he stayed at the party and did not attempt to curb the consumption by others.  From the description of the counseling found in Form 16, Plaintiff "admitted to being present at the party at which there was underage drinking," which was taken as a violation of "all of the Air Force core values." (Admin. R. [DN 50] at 210.)   Even though neither Captain Swanson nor Colonel Raybine considered the incident to be an alcohol related incident, it caused both of them to question Plaintiff's ability to become a productive member of the Detachment.  They counseled him regarding his conduct.   And although Captain Swanson and Colonel Raybine now say the counseling was not about alcohol, it is clear from the counseling Form 16 that they thought he was wrong to remain in a situation where others were engaging in underage drinking without trying to do anything to stop it. While Plaintiff is technically correct that the incident was not a violation of AFROTCI 36-2011 governing cadet conduct, he is not correct to say that he "did nothing wrong", at least in the eyes of his future superiors.  Had they seen it that way, they would not have counseled him.

It is clear from Paragraph 4.6.2 of AFROTCI 36-2011 that conduct occurring prior to coming into the program can be considered for disciplinary purposes.  Even though Plaintiff was not drinking, was a civilian at the time, and not subject to discipline, he was nevertheless involved in an alcohol related incident on October 30, 2009.

As for the second incident, the record clearly supports a finding that the Plaintiff engaged in an alcohol related incident on December 18, 2010, while a non-contract cadet in the AFROTC program.  Defendant argues that on December 18, 2010, Plaintiff, while underage, 1) consumed alcohol in his residence, 2) supplied alcohol to underage individuals, and 3) had control over the

situation, yet failed to stop underage consumption.   Each of these factual components individually violated separate clauses of Paragraph 4.6.4 of AFROTCI 36-2011.   Although there is some question as to whether he supplied the alcohol, Plaintiff hosted a party in which he and others engaged in underage drinking.   Not a capital offense by any stretch of the imagination, but as stated in paragraph 4.6.1 of the AFROTCI 36-2011, the AFROTC enforces a strict alcohol use and abuse policy.

The Plaintiff attempts to avoid this clear finding of an alcohol related incident on December 18, 2010 by arguing that it was discovered during the course of a sexual assault investigation and should not be characterized post-hoc as alcohol related.   The Court rejects this argument.   The form used to report Plaintiff for the December 18, 2010 incident was Form 10, entitled "Administrative Disenrollment Action Worksheet."   Though the checked box on this worksheet indicated that Plaintiff was being investigated for sexual assault, the form also clearly noted that although it was initiated "for this reason or reasons, the cadet's possible disenrollment from AFROTC is not limited to these particular reason or reasons."   (Admin. R. [DN 50] at 357.)   The fact that this alcohol related incident was discovered during the course of an investigation relating to sexual assault does not change the result—Plaintiff was involved in an alcohol related incident on December 18, 2010.   Despite how it was unearthed, the Court agrees with the agency's interpretation and finds that this incident is properly considered an alcohol related incident based on the facts in the record.

The Plaintiff has attempted to restrict this discussion to just the two incidents, however, the record supports a finding that the Plaintiff engaged in other alcohol related incidents on other occasions.   Rachel Gregor revealed to Captain Moore that Plaintiff provided her with alcohol on four or five other occasions in August and December of 2011.   Plaintiff admitted to having

sexual relations with Ms. Gregor on several other occasions after December 18, 2010, and that alcohol was involved on a few of those occasions.   Plaintiff argues that his admission that alcohol was involved on these occasions falls short of admitting that he provided the alcohol to her or that he was even present when it was used.   However, considering the record, it is a reasonable inference to draw that the two were drinking alcohol together prior to engaging in their sexual relations.

The Defendant disenrolled the Plaintiff based on a finding that he had been involved in "multiple alcohol related incidents." [2]   The record supports that factual finding.   The question is not whether the decision was right, or even fair, but whether there is a reasoned explanation for the action taken based on the evidence.   The Court finds that there is a rational connection between the facts found and the action taken.   Therefore, the decision to disenroll Plaintiff was not arbitrary or capricious based on the facts contained in the record.

### B.  Internal Notification and Investigatory Procedure

Plaintiff's next attack on the decision as arbitrary and capricious is that the AFROTC officers failed to follow internal procedures in notifying Plaintiff of and investigating Plaintiff for the potential alcohol related charges.

It is well settled that "[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."   Morton v. Ruiz, 415 U.S. 199, 235 (1974).   However, such is not the case where the agency's "rules were not intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion."   Am. Farm Lines v. Black Ball Freight Serv., 397 U.S. 532, 538 (1970).   The longstanding principle that it

---

[2] But even if the Court only considers the December 18, 2010 alcohol related incident, that one event is enough to support the decision to disenroll Plaintiff from the program.   While the agency's decision was based on "multiple alcohol related incidents," according to AFROTCI 36-2011, only one incident need occur, and it is fully within the agency's discretion to waive it or not.   AFROTCI 36-2011, at paras. 4.6.2, 4.6.4, 4.6.6, 11.2.

"is always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it" still applies.  Id. (quoting NLRB v. Monsanto Chemical Co., 205 F.2d 763, 764) (8th Cir. 1953).  "The action of either in such a case is not reviewable except upon a showing of substantial prejudice to the complaining party."  Id.; see also United States v. Eisenberg, No. CV 13-1629 (BAH), 2015 WL 8966841, at *14 (D.D.C. Dec. 15, 2015).  Further, "[w]hen the party challenging agency action fails to show that the agency's error may have affected the outcome of the proceedings, vacating and remanding the judgment is inappropriate." Charlton v. Donley, 846 F. Supp. 2d 76, 85 (D.D.C. 2012).

AFROTCI 36-2011 clearly states that its instructions do not afford rights to any of the ROTC cadets: "These internal procedures are not intended to create any rights for cadets other than those listed in the AFROTC Form 10, *Administrative Disenrollment Action Worksheet*." AFROTCI 36-2011, at para. 11.1.3.  Instead, the procedures "are designed to provide Det/CCs and HQ AFROTC with the best possible information on which to make decisions."  Id.  The Form 10 document is used only to obtain "complete and consistent information to include cadet notification of disenrollment, cadet elections during disenrollment, and cadet receipt of Report of Investigation (ROI) during the disenrollment process."  Id.  Further, it is made explicitly clear that the AFROTC Commander has unfettered discretion in this area to disenroll cadets from the program, as Paragraph 11.2 states: "The Commander of AFROTC (AFROTC/CC), acting for the United States Air Force, may disenroll any contract cadet at any time *with or without cause*."  Id. at para. 11.2.

Here, Plaintiff complains of the fact that the AFROTC Form 10 did not state that Plaintiff was under investigation for alcohol related offenses, and, therefore, he was not afforded proper

notice or a proper investigation according to the procedures found in AFROTC 36-2011. However, Plaintiff was informed of the fact that he could be disenrolled for reasons other than those specifically listed on Form 10, as Colonel Raybine stated that "possible disenrollment is not limited to these particular reason or reasons." (Admin. R. [DN 50] at 373.) Plaintiff received all procedural protections listed on Form 10 throughout the course of the investigation. Plaintiff indicated that he did not wish to waive his right to an investigation and he did not wish to waive his right to a 10-day period during which he could submit written materials on his behalf. Plaintiff was appointed a Military Advisor (hereinafter "MA"), Captain Jessica L. Tuntland, who would advise and assist Plaintiff throughout the investigation, and an investigating officer (hereinafter "IO"), Captain Kent N. Moore, who would review evidence and conduct the investigation. Captain Moore then conducted a full investigation in which he interviewed several witnesses and took a statement from Plaintiff himself, in the company of his civilian attorney, and Plaintiff opted not to submit written materials. Plaintiff was not denied the rights or protections afforded by Form 10.

However, Plaintiff maintains that he was neither notified of nor afforded a full and fair investigation specifically related to the alcohol charges. He believes that he was entitled to a separate investigation complete with all procedural protections provided by Form 10 specifically for the alcohol related incidents. Plaintiff ultimately challenges the fact that the AFROTC officers used the information found during the course of a sexual assault investigation in order to disenroll Plaintiff when he was not made aware of the reason for the disenrollment until after the fact. Plaintiff argues that this course of action violated the AFROTCI procedures and his rights provided by Form 10. Because these procedures are delineated by internal agency regulations, the agency may relax or modify them, so long as Plaintiff has not suffered substantial prejudice.

Am. Farm Lines, 397 U.S. at 538.   Therefore, the Court must determine if the Plaintiff has suffered any substantial prejudice.

The Court cannot find that Plaintiff was substantially prejudiced by the fact that no second investigation was conducted related specifically to the alcohol charges.   Plaintiff volunteered the information regarding his underage drinking and providing of alcohol to Gregor in his personal statement during the sexual assault investigation when he was not required to do so.   He clearly deemed it in his best interest and even had the assistance of counsel in making this decision.   Plaintiff provided this information while fully aware of the fact that disenrollment could occur for reasons not specifically listed on Form 10, as Colonel Raybine stated. Additionally, his statement made in connection with the sexual assault investigation would have been used in any separate investigation concerning only alcohol related incidents.[3]   The evidence supporting the alcohol related offenses was strong, based on his own admissions, and it is extremely unlikely that a new specific investigation into them alone would have changed the disenrollment decision.

Colonel Larson stated that "a second, specific investigation was not necessary" and a "new investigation" into the alcohol related incidents "was not necessary since a valid basis for disenrollment already existed."  (Admin. R. [DN 50] at 515–16.)  And, despite the fact that "it appears AFROTC personnel indeed did not follow every procedural step of the instruction, those errors would not have led to any substantive change in the outcome of AFROTC's decision regarding [Plaintiff's] disenrollment."  (Id. at 449.)    The Court agrees with Colonel Larson's assessment.  Plaintiff has not met his burden to show substantial prejudice

---

[3] Nothing in AFROTCI 36-2011 seems to preclude evidence found in prior investigations from being used again.  In fact, the instructions illustrate the fact that the procedures are rather informal: "The personal appearance is not a trial or hearing and the IO is not a judge.  Rules of evidence or procedure applicable in courts do not apply."  AFROTCI 36-2011, at para. 11.8.3.

## V. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff's Motion for

Judgment on the Administrative Record is **DENIED,** Plaintiff's complaint is hereby dismissed

with prejudice.


cc: counsel of record


*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

February 10, 2016